IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.  CRIMINAL NO: 1:11CR199
   Hon. James C. Cacheris

THEOPHILUS AKWEI,

               Defendant.

**MOTION TO SET ASIDE JURY VERDICT IN PART AND
AND FOR NEW TRIAL**

      COMES NOW the Defendant THEOPHILUS AKWEI and hereby moves, pursuant to Rule 29 (c), Federal Rules of Criminal Procedure, to set aside the jury verdict, in part, as to Count 1 of the superseding indictment in this case.  Defendant further moves, for the reasons below stated for a new trial pursuant to Rule 33, Federal Rules of Criminal Procedure.  As grounds for this motion, defendant respectfully states as follows:

**Procedural Status:**

      Defendant was indicted in the superseding indictment in Counts 1, 4 and 5 with, respectively, conspiracy to import heroin into the United States; distribution or aiding and abetting the distribution of heroin and possession with the intent to distribute heroin.  On February 2, 2012, a jury returned guilty verdicts on all three counts.  By way of a special verdict form, as to Count 1 of the superseding indictment, the jury found defendant guilty of conspiracy to import heroin and the jury also found beyond a reasonable doubt that defendant conspired to unlawfully import, possess aboard a plane or distribute 1000 grams or more of heroin.  This Rule 29(c) motion addresses only that portion of the verdict establishing the jury finding that defendant conspired as to an amount over 1000 grams (1 kilogram) of heroin.

1

**Legal Standard Involved Rule 29 motions:**

Under Rule 29(c)(1), Fed R. Crim. P., "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." If the jury returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." Fed.R.Crim.P. 29(c)(2). Entry of judgment of acquittal is appropriate where "the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). "A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient to 'establish factual guilt' on the charges in the indictment." *United States v. Alvarez,* 351 F.3d 126, 129 (4th Cir.2003) (quoting *Smalis v. Pennsylvania,* 476 U.S. 140, 144 (1986)).

A court considering a motion for judgment of acquittal must determine "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. McCloskey*, 682 F. 2d 468, 473 (4th Cir. 1982). If "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt," the jury's verdict must stand. *United States v. United Med. & Surgical Supply Corp.,* 989 F.2d 1390, 1402 (4th Cir.1993).

**Statement of Facts:**

The evidence clearly showed that one Edward Macauley, who was indicted, pled guilty but was not called to testify, was involved in and helped arrange and participate in over the course of the conspiracy several attempts to import heroin into the United States. The evidence showed that such was the case in September 2010 and November 2010, the latter involving

Emmanuel Annor, a person cooperating with both Ghanaian and United States law enforcement agencies. Annor, prior to that November incident, had become a paid informant of the DEA.

In February 2011, Frank Ehiobu became involved with the importation scheme. Ehiobu testified that this was his first time being involved with the importation of heroin into the United States. According to Ehiobu, he had arranged for a person he knew in the United States named "Senu" to receive the February shipment of heroin from the courier – Emmanuel Annor – which was to take place on February 21, 2011. By the afternoon of February 21, 2011, it became evident that "Senu" was not going to meet Annor to receive the heroin shipment. At approximately 4:00 p.m. that day, Ehiobu testified that he called Theophilus Akwei to do him this favor. He testified that he told Akwei that he was asking him to pick up heroin from a person at a hotel in Virginia. Akwei lived in Germantown, Maryland and had no automobile or driver's license. Ehiobu testified that Akwei told him he would ask a friend to help.

At approximately 7:30 p.m. that evening Akwei and his friend, Joseph Duodo, arrived at the courier's location. They met briefly with the courier - Mr. Annor - and a telephone call ensued to Ehiobu to verify that Annor was the right person they were to meet. Annor then returned to the hotel and retrieved a suitcase which he ultimately placed in the back seat of the automobile that the defendant occupied. Akwei and Duodo were placed under arrest by officers of the City of Alexandria police department a short time later on the charge of possession of heroin with the intent to distribute.

Direct evidence against the defendant came in the form of testimony by Frank Ehiobu. The evidence showed that Ehiobu had given several statements at first denying and later admitting involvement in the importation of heroin into the United States. He also testified that that this (the February 2011 incident) was his first involvement in the importation scheme. Two

weeks prior to trial - January 17, 2012 - Ehiobu testified that he met with the government and law enforcement agents in the presence of his attorney and gave a statement that included a statement that he did not tell the defendant when he called him that the favor he was asking Mr. Akwei to do involved heroin. Two days later - January 19, 2012 - after being told that the government did not believe him, he changed his statement in this regard and stated, as he did at trial, that he did in fact tell Mr. Akwei that there was heroin involved.

**Argument 1: Insubstantial Evidence to Support Jury Finding of Amount of Heroin:**

Assuming for the purposes of this motion that the evidence was sufficient to sustain the jury's verdict on Count 1as to defendant's involvement in a conspiracy, defendant is nevertheless entitled to have the instant motion granted to the extent that there was insubstantial evidence presented from which it could be found beyond a reasonable doubt that over 1000 grams (1 kilogram) of heroin was involved in any conspiracy involving Mr. Akwei.

The government presented evidence involving four (4) importation events as part of the overall conspiracy alleged in this case. These events occurred in September 2010, November 2010, February 2011 and June 2011. There was a insufficient evidence to support the notion that Mr. Akwei participated in or was even aware of any of the importation events before and after that February 2011 event. The couriers in each of these events testified at trial as did Ehiobu. Emmanuel Annor, the paid informant and courier in both November 2010 and February 2011, testified extensively as to the circumstances surrounding both importation events occurring in both Ghana and the United States. Matilda Antwi and Jaqueline Jordan, the couriers in the September 2010 and June 2011 events respectively, testified extensively as to events in Ghana prior to their arrests – both at the airport in Ghana when they attempted to depart for the United States. In no instance did anyone, Ehiobu included, offer any testimony concerning any

4

supposed participation in, or even knowledge of any of these events by Mr. Akwei. No testimony was presented by these witnesses from which it could reasonably be concluded that Akwei was aware of anything other than what occurred with reference to the February 2011 event.

The only possible evidence the jury could have considered were relatively oblique references that occurred in a series of recorded telephone conversations between Ehiobu and Austin Ani, a/a "Tony", a second paid informant, on February 22, 2011, the day after defendant's arrest. See Government Trial Exhibits 7-R, 7-R.T, 7-S and 7-S.T. In these conversations, both fairly brief, Ehiobu made several statements to Ani implying that Akwei had done an errand for him by delivering money for him. He also intimated that he was going to be the person to deliver a sample, presumably of heroin from the February shipment, to Ani. This is necessarily associated with the February importation scheme as Ehiobu stated the February scheme was his first involvement with importing heroin into the United States. As suggested during argument, it was curious that the government, who called Ehiobu as a witness, asked not one question concerning these matters. He was not asked what any errand related to. He was not asked if he had actually spoken with Akwei about delivering anything to Ani for him. Only Ani was questioned as to the content of his several conversations with Ehiobu – and then only to the extent as to what he understood Ehiobu to mean.

There was simply no other evidence to suggest Akwei knew anything about any transport of heroin outside the February shipment which, as we know, consisted of 988.8 grams of heroin- less than 1,000.00 grams (1 kilogram) of heroin. See Government Trial Exhibit 3-K.

To find otherwise would permit the extent of Akwei's involvement in the conspiracy and therefore his responsibility in terms of the amount of heroin attributable to him as part of a

5

conspiracy to be based on pure speculation and surmise. Defendant asks this court to enter a judgment in his favor on the jury finding as to the amount of heroin involved in the conspiracy.

**Argument 2: New Trial Motion: Evidence of Flight and Flight Instruction.**

Defendant filed pre-trial a *motion in limine* on the issue of whether the government would be permitted to elicit evidence it contended showed consciousness of guilt associated with the supposed flight of the defendant at the time of his arrest on July 14, 2012. That motion was denied and at the conclusion of the evidence jury instructions, again over defendant's objection, included a "flight" instruction.

At trial the court correctly noted the standards for consideration of flight evidence.

Essentially "The inference that one who flees from the law is motivated by consciousness of guilt is weak at best ...." *United States v. Foutz*, 540 F.2d 1976 (4th Cir. 1976). As explained in *United States v. Obi*, 239 F.3d 662 (4th Cir. 2001), a:

> "…. jury's consideration of evidence of flight requires that it be able, from the evidence, to link such flight to consciousness of guilt of the crime for which the defendant is charged. This requires evidence supporting all the inferences in the causative chain between flight and guilt. *See United States v. Beahm,* 664 F.2d 414, 420 (4th Cir.1981) (noting that the evidence of flight must be scrutinized to "ensure that each link in the chain of inferences leading to that conclusion [of the defendant's guilt] is sturdily supported"). To establish this causal chain, there must be evidence that the defendant fled or attempted to flee and that supports inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered. *See United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977) (articulating the chain of inferences in four deductive steps: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged"); *United States v. Schepp,* 746 F.2d 406, 409–10 (8th

6

Cir.1984) (same). In the absence of evidence to support any single link in the causative chain, it is error to give a flight instruction. *See United States v. Hawkes,* 753 F.2d 355, 358 (4th Cir.1985) (reversing defendant's conviction because there was "no direct evidence to indicate that [the defendant] was at the farm and subsequently fled to avoid capture and arrest by the police"); *Beahm,* 664 F.2d at 420 ("The government's failure to substantiate adequately the inference that defendant was aware he was wanted for the crime renders the instruction given the jury in this case irretrievably erroneous").

*United States v. Obi*, *supra* at 239 F.3d 662 at 665-666.

In the instant case, Mr. Akwei was originally arrested on February 21, 2011. He was held for approximately 3 weeks on the state charge and then transferred to federal custody. On March 18, 2011, after several more days in federal custody, the federal charge was dismissed "without prejudice", *United States v. Akwei*, 1:11mj204. Mr. Akwei was then released from custody and continued to live at his home in Germantown, Md. The arrest circumstances now at issue came almost five months after the original arrest on February 21, 2011 and almost four months after Mr. Akwei's release from custody when law enforcement officials came to his house in the early morning hours of July 14, 2011.

At trial DEA Senior Agent Mark Murtha testified that he had taken a position outside the rear of Mr. Akwei's home and was in place there on July 14 when other agents involved in the arrest approached and pounded on the front door of the house. He testified that around this time Mr. Akwei looked out the basement level back door of his home, opened the back door and took a step or two at which time he was ordered to lie down on the ground. He testified Mr. Akwei did not run and obeyed his command. After the arrest, Murtha testified that Mr. Akwei made a statement to the effect he was going or on his way to work. Martha Darko, Mr. Akwei's wife, testified that they were getting up early to pick her mother up from work as she got off work at 7:00 that morning. They had plans to pick up food and items for their "baby naming ceremony"

to take place two days later. Evidence was also presented that Mr. Akwei's passport, work documents and $ 3,200.00 in cash was found in his bedroom at the time of arrest.

The circumstances in this case do not support a flight instruction and flight evidence should not have been permitted.

Interestingly, in *Obi,* the facts and discussion are that when Obi was confronted:

> "He 'turned slightly, started to take a couple steps down the hallway,' and that after a policeman jumped on Obi's back, 'he carried [the officer] for a couple more steps' before being brought down. Obi notes that this conduct could reasonably be interpreted as evidence that Obi was startled at having been pounced upon unexpectedly by a man dressed in street clothing who burst from a hiding place.
>
> We agree with Obi that the evidence is thin and may be ambiguous."

*United States v. Obi*, 239 F.3d at 666.

Finding harmless error, the court did not need to decide the issue further.

In *Foutz, supra*, 540 F.2d 1976, the defendant remained at large some 8 days after he learned that he was wanted by the authorities. There was no evidence that he left the jurisdiction. The court declined to give a flight instruction but permitted the government to argue the matter to the jury. The Court of Appeals held this to be error and in reversing the defendant's conviction directed that upon any retrial evidence to demonstrate flight should be excluded.

In *United States v. Beahm, supra,* 664 F.2d 410, the defendant was charged with taking indecent liberties with children. Some three weeks after the criminal acts the defendant actually left the jurisdiction after receiving contact from the FBI that they wanted to speak with him. The Court of Appeals held that giving a flight instruction was improper when it could not be shown that the defendant's action related to the crime charged. The court noted the "unconscionable

8

burden" that would be placed upon a defendant to explain both innocent as well as guilty reasons for taking the action he did. In the instant case, however, there was no fleeing by the defendant from his home area in the almost four months since his release despite the fact that the dismissed charges could be brought back at any time.

What we have here is a flight instruction based on circumstances even more tangential than those questioned in *Obi*. Mr. Akwei did not resist arrest and obeyed the command to lie down on the ground when ordered. He did not try to get away with anyone on his back. He did not run. At most he took a step or two outside his back door. Although agent Murtha testified that Akwei said he was going to work, he was, in fact to go to work later that day and he and his wife had immediate plans to leave in order to pick up his mother-in-law from her work at the time of the arrest. Moreover, if the defendant truly had plans to flee, why would he leave without his passport and money found in his bedroom?

Under these circumstances, Defendant humbly suggests that evidence of flight should not have been admitted and a flight instruction should not have been granted.

**Conclusion:**

For the above reasons, Defendant respectfully moves this court to set aside the jury verdict as to the amount of heroin found to be involved in Count 1 and exercise its discretion to grant a new trial.

Respectfully submitted,

THEOPHILUS AKWEI
By Counsel

_____/s/_____
Gregory E. Stambaugh
VSB # 16089
Counsel for Defendant
Law Office of Gregory E. Stambaugh
9100 Church Street, Ste 103
Manassas, VA 20110
Phone: (703) 331-0220
Fax: (703) 331-3588
gregslaw@verizon.net

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was electronically filed and served via the Court's CM/ECF system to all counsel of record this 16th day of February, 2012.

_____/s/_____
Gregory E. Stambaugh
VSB # 16089
Counsel for Defendant
Law Office of Gregory E. Stambaugh
9100 Church Street, Ste 103
Manassas, VA 20110
Phone: (703) 331-0220
Fax: (703) 331-3588
gregslaw@verizon.net