IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| THEOPHILUS AKWEI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11-CR-199-JCC-6; |
| | ) | 1:14-CV-622 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner Theophilus Akwei's ("Petitioner" or "Akwei") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (the "Motion"). [Dkt. 353.] For the following reasons, the Court will deny Petitioner's Motion.

### **I. Background**

On August 24, 2011, a federal grand jury returned a superseding indictment charging Petitioner and eight other individuals (collectively "the Macauley organization") with a conspiracy involving the importation of large quantities of heroin from Ghana to the United States. [Dkt. 63.] Petitioner was charged with three counts: (1) conspiracy to import heroin, in violation of 21 U.S.C. § 963; (2) distribution for the purpose of unlawful importation of heroin, in violation of 21 U.S.C. §§ 959(a), 960; and (3) possession with intent to

1

distribute heroin, in violation of 21 U.S.C. § 841. (Id.) These three counts were based primarily on Petitioner's involvement in a drug transaction that occurred on February 21, 2011.

Petitioner proceeded to a three-day trial by jury. As described by the Fourth Circuit in affirming Petitioner's conviction and sentence:

> In February 2011, [co-conspirators] Ehiobu and Macauley planned a shipment in which Emmanuael Annor, a courier who was working as an undercover Drug Enforcement Agency ("DEA") informant, took a carry-on bag containing heroin from Accra, Ghana to Washington, D.C. There, a second courier was supposed to pick the bag up and transport it to the appropriate seller. When Annor arrived in Washington on February 21, however, the second courier failed to appear, and Annor proceeded to an Alexandria, Virginia hotel with the heroin-laden bag. Ehiobu promised to send someone else to collect the drugs.
>
> On the evening of February 21, Akwei had Joseph Duodo, an associate familiar with northern Virginia, drive him to the Alexandria hotel to meet Annor. Akwei and Annor verified each others' identities by telephoning Ehiobu in Ghana; Annor recorded the calls. Akwei greated Ehiobu as "Uncle Frank" and Ehiobu told Annor, "[i]t's him." J.A. 74. The pair discussed how Annor would transfer the bag to Akwei, who promised to "pay [Annor] the money later." Id. After several more phone calls to Ehiobu, Annor placed the bag in the back of Duodo's car.
>
> Shortly after the pick-up, the DEA directed local officers to stop Akwei and Duodo and arrest them. The arresting officers

2

        recovered the bag, which contained 988.8
        grams of heroin.

United States v. Akwei, 514 F. App'x 291, 292-93 (4th Cir. 2013). At Petitioner's trial his co-conspirators and the Government's confidential informants testified against Petitioner. Specifically,

> Ehiobu affirmed that Akwei had agreed to pick up the bag and knew it contained heroin. Annor and Ani testified to the recorded phone conversations. Ani explained that he understood Ehiobu's description of Akwei as someone who runs errands to mean that Akwei performed drug-related messenger and courier work for Ehiobu. Evidence further revealed that the Macauley organization had orchestrated three other heroin importation efforts in 2010 and 2011, each involving a courier transporting over one kilogram of heroin from Ghana to the United States. The government presented evidence that Akwei and Macauley knew each other by submitting Macauley's phone contact list, which, at the time of Macauley's arrest, contained Akwei's name and phone number. Agent Murtha testified to Akwei's behavior on the morning of his July 14 arrest, describing how "mounds of clothes" and "other debris" blocked the path through the basement to the back door where Akwei exited [and fled from officers].

Id. at 294. On February 2, 2012, the jury found Petitioner guilty of all three counts. [Dkt. 190.]

On May 11, 2012, Petitioner was sentenced to the mandatory minimum one hundred and twenty (120) months as to the conspiracy conviction, ninety-seven (97) months as to the distribution conviction, and ninety-seven (97) months as to the

3

possession conviction, all to run concurrently, meaning Petitioner had one hundred twenty (120) months to serve with credit for time served. [Dkt. 275.] After his conviction and sentence were affirmed by the Fourth Circuit, see United States v. Akwei, 514 F. App'x 291 (4th Cir. 2013), Petitioner filed a petition for certiorari, which the United States Supreme Court denied on October 7, 2013. (Gov't Opp'n [Dkt. 374] at 1.)

As grounds for relief in the Motion now before the Court, Petitioner claims that defense counsel provided ineffective assistance before and during his trial. (Mot. to Vacate at 2-3.) Specifically, Petitioner raises five claims, and contends that counsel was ineffective by:

(1) failing to file a suppression motion for the evidence obtained as a result of the warrantless search of the car, (id. at 2, 7-19);

(2) failing to request fingerprint analysis of the suitcase that contained the heroin, (id. at 2, 19-21);

(3) preventing Petitioner from testifying on his own behalf at trial, (id. at 3, 21-23);

(4) failing to confront Frank Ehiobu during his testimony regarding prior inconsistent statements and his role in the offense, (id. at 3, 23-27); and

4

(5) advising Petitioner to reject the Government's plea offer, even though Petitioner had passed a lie detector test, (id. at 3, 27-33.)

Petitioner asks the Court to hold an evidentiary hearing, but does not specify the ultimate relief he seeks in this Motion. (Id. at 34.) It is apparent from his allegations that he wants the Court to, at the least, order a new trial.

## II. Standard of Review

A motion to vacate under 28 U.S.C. § 2255 allows a prisoner to challenge the legality of his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of demonstrating his grounds for relief by a preponderance of the evidence. See Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

A section 2255 motion is a federal statutory habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus[.]'")

5

(quoting Davis v. United States, 417 U.S. 333, 343 (1974)).  The existence of the right to pursue a collateral attack, however, does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).  Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are procedurally barred from review under section 2255.  See Bousley v. United States, 523 U.S. 614, 621-22 (1998).

Nevertheless, an exception applies for claims of ineffective assistance of counsel, such as those asserted here. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." (citation omitted)).

Under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694.

To establish constitutionally deficient performance under the first prong, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see also Strickland, 466 U.S. at 687. Given it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision. "[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

The second prong requires a petitioner to "affirmatively prove prejudice," which necessitates a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

With this standard in mind, the Court addresses Petitioner's claims of ineffective assistance below.

### III. Analysis

As an initial matter, the Court finds, and the Government concedes, that Petitioner's Motion is timely. (See Gov't Opp'n at 1 ("Accordingly, it appears that the defendant's motion filed under 28 U.S.C. § 2255 less than one year later is timely.") (citing United States v. Linider, 552 F.3d 391, 396 (4th Cir. 2009)).)

#### A. Suppression Motion

Petitioner first argues that "he was denied effective assistance of counsel based on his [attorney's] failure to move for the suppression of the entire evidence that was obtained by a warrantless search of his car and lack of probable cause." (Mot. to Vacate at 8.) Petitioner claims he demanded that his

8

attorney file a motion to suppress. (Id.) Petitioner also contends the stop and search of the vehicle was unconstitutional in violation of his Fourth Amendment rights, because "the only reason given by the arresting officers in stopping his car was that it was being operated in an unlawful manner," even though the "seizure and arrests were made at least in substantial part, because of the information furnished [by] the informants - Mr. Annor and Mr. Anni." (Id. at 13.) Petitioner's argument is unavailing because the Court finds that filing a motion to suppress would have been futile.

This claim fails to satisfy the first prong of Strickland because Petitioner "cannot demonstrate that reasonable counsel would necessarily have" filed a motion to suppress based on the circumstances surrounding the search of the vehicle. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (citing Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.")). In the declaration of Petitioner's counsel, attached to the Government's opposition brief, counsel states that although he does not specifically remember Petitioner "demanding" that he file a motion to suppress, he discussed such a motion with co-counsel and determined it would be frivolous because "the defendants had been arrested as a part of a 'sting' and . . . the heroin had been placed in the vehicle in a

9

monitored surveillance operation[.]" (Decl. [Dkt. 374-1] at ¶ 1.) The Government is correct: the evidence at trial established that "not only did the agents have 'probable cause' to believe that the vehicle contained heroin, they knew that it did - they had just watched their confidential source place it in the back seat." (Gov't Opp'n at 3 (citing Trial Tr. at 153-54.).)

Under these factual circumstances, any motion to suppress evidence allegedly obtained in violation of the Fourth Amendment would have been futile. See, e.g., United States v. Ortiz, 669 F.3d 439, 444-45 (4th Cir. 2012) ("Of course, if the officer has probable cause to believe that a search of the vehicle would uncover contraband, he may search the vehicle . . . . Probable cause is a flexible standard that simply requires a reasonable ground for belief of guilt and more than bare suspicion.") (internal quotation marks and citations omitted). Officers saw their own confidential informant place a suitcase containing a large amount of heroin in the back seat of the vehicle. The officers then later stopped the vehicle and discovered Petitioner and the heroin-filled suitcase inside the vehicle. Thus, because Petitioner cannot show deficient performance in this regard, Moody, 408 F.3d at 151, this claim will be dismissed and the Court need not reach the second issue of prejudice. See Strickland, 466 U.S. at 700.

### B. Fingerprint Analysis

Petitioner next claims counsel was constitutionally ineffective for failing to obtain a fingerprint analysis on the suitcase containing the heroin, which allegedly would have "proved to the jury that petitioner's print was not in [sic] the suitcase which could have prompted the jury to find him not guilty[.]" (Mot. to Vacate at 19.) This claim is built on a false premise. "There was never any claim by the government that [Petitioner] had handled either the bag or the heroin contained with it . . . . [T]he absence of [Petitioner's] fingerprints on the heroin or the bag would have proven nothing." (Decl. ¶ 3.) Again, just like the motion to suppress, any fingerprint analysis of the suitcase would have been futile. Moody, 408 F.3d at 151. Thus, counsel's performance was not deficient under this claim, and the Court need not address the prejudice prong. See Strickland, 466 U.S. at 700.

### C. Petitioner's Right to Testify

Next, Petitioner contends:

> [P]etitioner's counsel told him that it was not a good idea to take the stand and when he insisted that he will take the stand, counsel threatened to quit as counsel if he continue [sic] to insist to take the stand, thus, as a result of counsel's threat, petitioner abandoned his quest to take the stand.

11

(Mot. to Vacate at 21.)  Petitioner's counsel contradicts this claim as "simply not true."  (Decl. ¶ 4.)  Counsel declares that he "did not prevent [Petitioner] from testifying.  On the contrary, [he] had prepared him to testify at trial.  However, during trial [Petitioner] became very nervous and emotional.  [Petitioner] ultimately decided not to testify, and [he] let him make that decision."  (Id.)  To rebut this assertion, in his reply, Petitioner attached an affidavit from his wife, who swears, "counsel told my husband in my presence [on the second day of his trial], that he would not allow him to take the stand because by taking the stand, that he will make the work very difficult for him."  (Pet.'s Reply [Dkt. 392] at 19.)  Based on the evidence in the record, the Court finds Petitioner's allegation is refuted by counsel's sworn statement, which the Court finds credible.  See Ecker v. United States, No. 1:11cv1006 (LMB), 2012 WL 6214356, at *7 (E.D. Va. Dec. 12, 2012) (rejecting petitioner's ineffective assistance claim on grounds that the record contradicted his arguments).

Even if Petitioner could establish that Defense counsel was deficient in this regard, he has still not met the requisite showing of prejudice that is necessary under Strickland.  See Hernandez Portillo v. United States, No. 1:07-CR-0081-GBL, 2014 WL 3615815, at * (E.D. Va. July 17, 2014) ("[T]he Court finds that had Petitioner testified during trial

12

his testimony would have been both cumulative and not credible, and the weight of evidence against Petitioner was overwhelming such that a jury could have found him guilty regardless."). Assuming Defense counsel prevented Petitioner from testifying, he still must show "that his testimony had a 'reasonable probability' of changing the outcome." United States v. Rashaad, 259 F. App'x 972, at \*\*2 (4th Cir. Nov. 5, 2007) (unpublished per curiam). Here, Petitioner states he would have taken the stand to "tell the jury his own side of the story and to personally refute all these lies that was told against him by the government witnesses." (Mot. to Vacate at 19.) Petitioner even admits that his "testimony might have been of prime importance to his defense[.]" (Id. at 23.) Stated differently, in his own Motion, Petitioner admits that he cannot show his testimony had a reasonable probability of changing the outcome. Accordingly, the Court will dismiss this claim as well.

### D. Mr. Ehiobu's Prior Inconsistent Statements

Next, Petitioner claims that counsel was ineffective for failing to confront Government witness Frank Ehiobu with two inconsistent statements he made at the time of his arrest in Ghana. (Mot. to Vacate at 24.) In response, Defense counsel cites to a specific portion of the trial transcript where he cross-examined Mr. Ehiobu about his statement to federal agents that Petitioner did not know the bag contained heroin. (Decl. ¶

13

5 (citing Trial Tr. at 137-43).) The record in this case plainly contradicts Petitioner's claim, and therefore, it will be denied on this basis. See Jackson v. United States, 638 F. Supp. 2d 514, 530 (W.D.N.C. 2009) ("[A]llegations which are contradicted by the record do not warrant relief[.]" (citation omitted)); see also Ecker v. United States, No. 1:11cv1006 (LMB), 2012 WL 6214356, at *7 (E.D. Va. Dec. 12, 2012) (rejecting petitioner's ineffective assistance claim on grounds that the record refuted his arguments).

Regardless, even if Defense counsel had not cross-examined Mr. Ehiobu to Petitioner's liking, it is not sufficient for Petitioner to now only show that he is unsatisfied with what the Court construes as counsel's strategic decision. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (finding that courts are reluctant to second guess counsel's strategic choices); Goins v. Angelone, 52 F. Supp. 2d 638, 663 (E.D. Va. 1999) ("The Strickland standard mandates considerable deference to trial counsel's strategic choices, whether or not those choices are ultimately successful."). Accordingly, counsel's performance in this regard was not deficient. Because counsel's performance

14

was not deficient under this claim, the Court need not address the prejudice prong.  See Strickland, 466 U.S. at 700.

### E. Rejecting Government's Plea Offer

Lastly, Petitioner claims that counsel's advice "to reject the Government's plea offer" constituted ineffective assistance, given "he had passed a lie detector test that he had arranged for him to take."  (Mot. to Vacate at 3, 27-33.) Defense counsel states that he "never advised the defendant to reject a plea offer because the defendant had passed a polygraph[,]" and only suggested taking a polygraph because it "might be helpful in negotiations with the government."  (Decl. ¶ 6.)  Again, this argument is based on a false premise, and is thus unavailing.

Even assuming counsel's performance was deficient, which the Court need not address; Petitioner has not shown any prejudice under this claim.  To show prejudice in a case concerning a plea offer, "petitioner[] must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it, if they had the authority to exercise that discretion[.]"  Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Missouri v. Frye, 132 S. Ct. 1399, 1405

15

(2012)).  Importantly, "after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."  Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (citations omitted).

Petitioner presents no evidence that suggests he would have accepted any plea offer from the Government.  Instead, Petitioner steadfastly maintains his innocence, and confounds counsel's advice regarding any plea offer from the Government.  Defense counsel advised Petitioner to not plead guilty to any charge if he was not in fact guilty, just "as [he] tell[s] all of [his] clients."  (Decl. ¶ 10(a).)  And even though Petitioner might not want to accept this truth, the isolated fact that Petitioner took and passed a lie detector test does not somehow alter or affect the plea negotiation process.  Defense counsel approached "the government with the results in the hope that the government would reduce or dismiss the charges against him . . . but the government was not persuaded."  (Id. at ¶ 10(b).)  Defense counsel then went on to advise Petitioner that "the evidence against him was compelling and that he should consider accepting the government's plea offer or at least authorize [him] to explore a more favorable plea offer.  The defendant did not authorize [him] to do so, however."  (Id.)  Absolutely none

16

of this was conditioned upon the taking or passing of a lie detector test.

In short, there is nothing "in the record to suggest that Petitioner ever intended to plead guilty to the offenses with which he was charged." Berry, 884 F. Supp. 2d at 463. In the instant Motion, Petitioner places great weight on the lie detector test results and the impact those results should have had on Defense counsel's advice regarding plea negotiations. However, because Petitioner cannot demonstrate a reasonable probability that he would have accepted the plea offer, regardless of whether a lie detector was taken or not, this claim too must fail. Merzbacher, 706 F.3d at 366 (4th Cir. 2013) (quoting Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012)).

### F. Request for Evidentiary Hearing

The Court will also deny Petitioner's request for an evidentiary hearing on the Motion. "In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). "Evidentiary hearings on 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." Benkahla v. United States, No. 1:06cr9 (JCC), No. 1:10cv30, 2010 WL 2721384, at *9 (E.D.

17

Va. July 8, 2010) (quoting Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003)).

### IV. Conclusion

For the foregoing reasons, the Court will deny Petitioner's Motion. The Court will also decline to issue a certificate of appealability, because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 17, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |